Hemphill, Ch. J.
The petition having been dismissed on demurrer, the only question which ¡irises is, whether there was therein disclosed a cause of action-The plaintiff' (who is appellant in this court) had obtained from the Government, in 18-42, a contract for the colonization of an extensive territory between the Medina and the Rio Grande, which expired in 1847; and the object of his petition is to cause an injunction to be issued to John James, the county surveyor of Bexar county, in which the territory is situated, to restrain him from making locations and surveys on head rights and other land scrip within the limits of the said expired grant. The suit, in its inception, involved extensive interests on the part of the appellant and those whom he assumed to represent; but it lias been suggested, and it is agreed, that it lias now dwindled to-, a mere dispute about costs, of a comparatively trifling amount.
This cannot affect the rights of the plaintiff, as dependent upon his own allegations, but will render it unnecessary for the court to enter largely into the reasons upon which our judgment is founded.
There are too many controversies, involving important interests, pressing-for decisiou to justify the consumption of time in discussing questions which,, at least in the particular case, can only affect the trivial sums expended for costs in the litigation. The plaintiffs, and the colonists on whose behalf he attempts to sue, have been provided for by an act of the Legislature; and the titles to the lands, claimed in consequence of a partial fulfillment of the contract, have been secured; and the only interest to be affected by the decision-arises out of the, costs of suit.
The contract is not set forth, and the terms are no further known than as-they are disclosed by the petition.
The plaintiff alleges that lie agreed to introduce one thousand families, from, foreign parts, into ills colony, bat was prevented by uncontrollable difficulties from complying fully with its terms. Among these difficulties, the most prominent is the act of the Government of the Republic of Texas, in annexing the-country to the United States; the laws of the latter, especially on the subject of naturalization, being less liberal than those of the former; and the general impression created in Europe, that the act of annexation would lead to a protracted war with Mexico, and that such circumstances were calculated to retard emigra! ion to his colony, situated on the extreme western frontier, and extending to Ihé Rio Grande.
Wliether a foreigner would prefer emigrating to Texas as an independent Republic, or to her as a constituent portion of the United States, is a subject merely of speculative disquisition, dependent on the will or caprice of the emigrant himself. The probatory term before naturalization was, it is true, much-shorter in Texas than in the United States; but perhaps the protection *111 and security afforded by the strength and power of the United States would, in the opinion of most persons, greatly preponderate over this and other advantages afforded by Texas, in her separate and independent existence or capacity. At the most and the best for the plaintiff, it is a mere matter of opinion, and presents no such obstacle to the fulfillment of the contract as could be made the ground of judicial interposition for relief.
Nor does tlie alleged impression in Europe, that annexation would lead to a. war with Mexico, form a ground for the relief sought by the plaintiff. The contract was made in 1S42, when war existed with Mexico. History records that, during that year, the Mexican troops twice marched through the extent of the territory embraced iu the contrae!, in their hostile incursions into the country. In fact, this territory was tlie theater of active hostilities. The war commenced several years anterior to the date of the contract, and was continued subsequently, and until it was terminated by the treaty of Guadalupe Hidalgo. In no respect could the war, as waged between the United States- and Mexico, present an obstacle to the execution of the contract. It was, in fact, tlie removal of the difficulty, if any, such as in legal contemplation could have been made available for the benefit of the plaintiff in this suit, had theretofore existed. Anterior to annexation, the war had been waged under all tlie disadvantages consequent on the vast superiority of the enemy in power, resources, and the numerical force of her population. Subsequent to the incorporation of Texas into the United States, the advantages were changed; and we became superior to the enemy, in all the elements essential to the successful prosecution of the war. Its attitude was changed from that of defense to one of offensive operation. Hostilities were no longer waged, nor were they to be dreaded or anticipated in the territory embraced by the contract. The impediments arising from a state of war were, therefore, in fact, removed by the substitution of the United States for Texas as one of the antagonists, and were neither created nor augmented by that substitution.
But had it been alleged that this territory had again become the scene of hostile operations, and that the impressions in Europe, relative to the dangers to be incurred by an emigrant, had been justified by the facts which had transpired, yet it is extremedy problematical whether such allegations would, under the circumstances, have furnished any ground for the relief' prayed iu the petition.
The contract had its inception at a period when the frontiers were suffering from the hostilities of Mexican and Indian warfare. And it is but a rational-presumption that the policy on which such grants were founded was to induce settlers upon the frontiers, iu bodies sufficiently numerous to protect themselves and shield the interior from further hostility and outrage. If this purpose were not accomplished, the principal end of the grant was defeated and the failure of the empresario, under such circumstances, with a full knowledge at the time of tlie contract of the difficulties to be encountered, the Government being in no default, can furnish no ground for such relief as the party prays for in liis petition, in a court of justice^ and, especially, for the extension of time for the completion of his contract, if, indeed, any ground whatever would authorize the assumption of such power by the judiciary.
The plaintiff does not, by his petition, seek to restrain locations and surveys on lands which have been selected and surveyed for the colonists introduced by himself or for his own premium lands, but on any and every part of the vast territory which, on tlie expiration of the grant, liad reverted, it is presumed, to the mass of public domain.
He avers that, by.the terms of bis contract, tlie lands were to be surveyed within tlie time limited for its existence ; and lie has not shown that, by any act of tlie Government, lie was prevented from the completing of such surveys •or the titles. Had lie sought to enjoin locations on lands which had been selected and surveyed in conformity with the terms of the contract, hut to-which titles were not completed, his application would have presented a very different aspect.-
*112 The equities of the plaintiff, if he have any, are too intangible and remote 'for judicial relief, or to justify the exclusión from public use, for an indefinite period, the extensive territory embraced within the limits of the forfeited .grant.
We do not deem it necessary to further continue the discussion of the questions presented in this cause, inasmuch as the plain tiff has obtained all the relief which he could, on any substantial grounds, have anticipated from either the judicial or legislative branch of the Government, and the controversy has ’become more fictitious than real. We are of opinion that there is no error in ithe judgment, and that the same be affirmed.
Judgment affirmed.